LaVECK et al., Appellants,

v.

AL'S MUSTANG STABLE et al., Appellees.

[Cite as *LaVeck v. Al's Mustang Stable* (1991), 73 Ohio App.3d 700.]

Court of Appeals of Ohio,
Trumbull County.

No. 90–T–4402.

Decided July 8, 1991.

*Stephen J. Chuparkoff,* for appellants.
*Richard D. Goldberg,* for appellees.

HENDRICKSON, Judge.

This is an appeal from a decision of the trial court granting appellee's motion for a directed verdict.

In the latter part of 1986, appellants, Deborah LaVeck and her son, Jodi LaVeck, asked appellee, Alfred Ciriello, Jr., to appraise a wrecked automobile. While at his place of business, known as "Al's Mustang Stable," they saw a red 1969 Mustang. Since Jodi wanted a 1969 Mustang, they asked if it was for sale. (There was no "for sale" sign on the car.) Appellee informed them that the auto belonged to his son and that he intended to paint the car and make certain repairs, after which it would be for sale.

In the spring of 1988, appellants contacted appellee to discuss the possibility of purchasing the Mustang.

Appellant, Deborah LaVeck, testified that appellee represented that he had rebuilt the engine and transmission, and that there was no plastic filler in the car.

Appellants asked a friend, Rick Vedino, who had worked in a local service station, to examine the car. Appellants and their friend test drove the car and inspected it out of appellee's presence.

Vedino testified that appellee told him that he had rebuilt the engine and transmission, and that there was no plastic filler in the car. Vedino, after inspection, told appellants that he would not buy the car. He said it was not worth the money appellee demanded.

Nevertheless, appellants purchased the car and signed a sales agreement, which stated that appellee assumed no responsibility for any repairs regardless of any oral statements made.

Soon thereafter, appellants encountered problems with various parts of the car. Eventually, appellants discovered that the car contained plastic filler. Appellants then filed the present action. A jury was impaneled and, during the appellants' case, it was discovered that neither the engine nor transmission had been rebuilt. At the close of appellants' evidence, the trial court granted a directed verdict and entered judgment in favor of appellee on all counts of the complaint.

Appellants raised the following two assignments of error:

"1. The trial court erred to the prejudice of plaintiffs-appellants in granting the motion for directed verdict made by defendant-appellee at the close of the plaintiffs-appellants' case.

"2. The trial court erred to the prejudice of the plaintiffs-appellants in sustaining the objections of defendant-appellee to evidence of other automobiles purchased and sold by defendant-appellee."

In the first assignment, appellants assert that the trial court erred in granting a motion for a directed verdict.

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." Civ.R. 50(A)(4).

The question before this court is whether or not under the Ohio Consumer Sales Practices Act, appellee is a "supplier," *i.e.*, whether he is "engaged in the business of effecting or soliciting consumer transactions."

R.C. 1345.01(C) defines "supplier" as " * * * a seller, lessor, assignor, franchisor, or other person *engaged in the business of effecting or soliciting consumer transactions*, whether or not he deals directly with the consumer." (Emphasis added.)

In an attempt to construe this portion of the statute, the court in *Moore v. Florida Bank of Commerce* (S.D.Ohio 1986), 654 F.Supp. 38, 41, stated that:

"Although no Ohio court has defined the level of business activity required for a finding that one is 'engaged in the business of' effecting or soliciting consumer transactions, the Defendant urges and the Court agrees that the phrase implies more than one isolated sale, especially when that sale is not within the seller's usual course of business. The phrase 'engaged in the business of' is commonly used in statutory schemes and has generally been held to connote continuous or regular activity, rather than a singular or isolated sale. *See United States v. Tarr*, 589 F.2d 55 (1st Cir.1978) (the words 'to engage in the business of' strongly imply more than one isolated sale or transaction); *Fillippo v. S. Bonaccurso & Sons, Inc.*, 466 F.Supp. 1008 (E.D.Pa.1978) ('being engaged in an activity requires more than a single act or transaction or occasional participation'); *UFI-TEC, S.A. v. Carter*, 20 Cal.3d 238, 571 P.2d 990, 142 Cal.Rptr. 279 (1977) (the phrase 'engaged in the business of' connotes a certain regularity of participation)."

In the case *sub judice*, although appellants imply that appellee is essentially a dealer in antique or classic Mustangs, the record discloses that appellee operated a repair shop and that the sale of cars which he repaired did not exceed three vehicles in any one year. While this is more than an isolated transaction as in *Moore*, is it sufficient to support the contention that appellee was "engaging in the business of effecting or soliciting consumer transactions"? We are not convinced that these three sales are sufficient to classify appellee as a supplier. There was no evidence that appellee was licensed as a dealer. Furthermore, the Mustang in question was titled in the name of appellee as an individual and there was no indication that it was advertised for sale. In fact, it was appellants, not appellee, who made the initial contact. Thus, we are unable to find that appellee is a "supplier" as defined in R.C. 1345.01(C).

In response to the implication that appellee is a dealer, we must define the word "dealer." Ohio Adm.Code 109:4–3–16 defines a "dealer" as "any person engaged in the business of selling, offering for sale, or negotiating the sale of five or more motor vehicles during one calendar year, including the officers, agents, sales persons or employees of such a person; or any person licensed as a motor vehicle dealer or salesman under Chapter 4517 of the Revised Code." Looking to the record before us, appellee sold no cars in 1987, three cars in 1988, and no cars in 1989. Thus, appellee is not a "dealer" as defined in the Ohio Administrative Code.

Therefore, we conclude that R.C. 1345.01 does not apply, as appellee is neither a supplier nor a dealer, since there is insufficient activity on his part to find that he "engages in the business of effecting or soliciting consumer transactions."

We acknowledge that appellants also contend that appellee made false and fraudulent misrepresentations in the sale of the automobile. However, appellants have failed to establish one of the elements of fraud, namely, that they justifiably relied on the representations.

Appellee cites *Traverse v. Long* (1956), 165 Ohio St. 249, 59 O.O. 325, 135 N.E.2d 256, for the proposition that where conditions are discoverable and the purchaser has the opportunity for investigation and determination without concealment or hindrance by the vendor, the purchaser does not have just cause for complaint even though there are misstatements and misrepresentations by the vendor.

*Long* is inapplicable to the case at bar because, in that case, the court dealt specifically with a real estate transaction.

As pointed out by appellants, subsequent cases have held that the rule of *caveat emptor* generally has no application to the sale of personal property, including used cars, citing *Feliciano v. Moore* (1979), 64 Ohio App.2d 236, 18 O.O.3d 176, 412 N.E.2d 427; *Manning v. Len Immke Buick, Inc.* (1971), 28 Ohio App.2d 203, 57 O.O.2d 308, 276 N.E.2d 253.

However, the foregoing cases are likewise not applicable to the instant case, since they concern transactions involving auto dealers. Having previously concluded that appellee was not a dealer within the context of the Ohio Administrative Code, these cases are inappropriate.

The trial court concluded that appellants had a duty to investigate and was given such an opportunity by appellee.

■ Moreover, the record reveals that appellants had an opportunity to inspect the car and make inquiries thereon. Appellants did seek the assistance of a friend who inspected the car and informed appellants that he would not buy the car and that it was not worth the money. Notwithstanding their friend's advice, appellants purchased the car. In light of the foregoing and the fact that appellants knew the car was nineteen years old at the time of purchase, they were not justified in relying on any representations regarding the quality or condition of such an aged car; the trial court did not abuse its discretion in so finding.

■ Appellants also assert that appellee made express warranties regarding the vehicle. The record discloses that the purchase agreement, signed by appellee, read as follows:

"I do understand that I will pay all cost for any repairs as I, the seller of said vehicle, assume no responsibility for any repairs regardless of any oral statements made pertaining to said vehicle [*sic*]."

The trial court construed the foregoing language as creating an "as is" agreement which eliminated any argument regarding the existence of warranties.

The trial court's finding of an "as is" agreement is clearly supported by the language contained therein. Therefore, the finding of no express warranties was not an abuse of discretion.

Thus, the first assignment of error is without merit.

In the second assignment of error, appellants contend that the trial court erred by excluding evidence of other automobile sales made by appellee in 1988.

In an effort to substantiate that appellee was a supplier or a dealer, appellants attempted to introduce evidence of the price appellee paid for the two cars, other than the one at issue, which he sold in 1988 and the price for which he sold them. Although appellants assert that such evidence is relevant, the trial court refused to permit its introduction into the record.

Evid.R. 401 provides:

" 'Relevant' evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Furthermore, "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. Thus, since appellee had already stipulated that during 1988 he had repaired or worked on three cars and sold them, the trial court had before it the evidence necessary to determine whether appellee was a supplier or a dealer. Consequently, there was no abuse of discretion on the part of the trial court in excluding the evidence which is the subject of this assignment of error.

Therefore, appellants' second assignment of error is hereby overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., and BASINGER, J., concur.

WILLIAM R. HENDRICKSON, J., retired, of the Twelfth Appellate District, sitting by assignment.

RANDALL L. BASINGER, J., of the Putnam County Court of Common Pleas, sitting by assignment.